1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DeANDRE ROBINSON,

11          Petitioner,                    No. 2:11-cv-1219 WBS KJN P

12      vs.

13   MATTHEW CATE,

14          Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Petitioner is a state prisoner, proceeding without counsel, with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2009 conviction.

19   In case number 08F06853, petitioner pled no contest to one count of second degree robbery, and

20   admitted that he used a firearm during the commission of that offense.  (Respondent's Lodged

21   Document ("LD") 1 at 9-10.)  Petitioner admitted that his conduct in case number 08F06853

22   violated petitioner's probation in case number 07F07932.  (LD 1 at 10-11.)  Petitioner was

23   sentenced to twelve years in state prison:  two years for the robbery, and ten consecutive years for

24   the firearm enhancement.  (LD 2.)

25          In the instant petition, petitioner claims his no contest plea was involuntary and

26   unintelligent due to ineffective assistance of counsel.  After careful review of the record, this

1

1   court concludes that the petition should be denied.

2   II.  Procedural History

3           Petitioner entered a plea of no contest on July 17, 2009.  (LD 1.)  Petitioner was

4   sentenced to twelve years in state prison on August 13, 2009.  (LD 2.)  Petitioner did not file an

5   appeal.

6           On July 28, 2010, petitioner filed a petition for writ of habeas corpus in the

7   Sacramento County Superior Court.  (LD 3.)  The Sacramento County Superior Court denied the

8   petition on September 21, 2010.  (LD 4.)

9           Petitioner filed a petition for writ of habeas corpus in the California Court of

10  Appeal, Third Appellate District, on October 18, 2010.  (LD 5.)  The petition was denied without

11  comment on October 21, 2010.  (LD 6.)

12          On November 22, 2010, petitioner filed a petition for writ of habeas corpus in the

13  California Supreme Court.  (LD 7.)  The California Supreme court denied the petition without

14  comment on June 15, 2011.  (LD 8.)

15          The instant petition was filed on May 5, 2011.  (Dkt. No. 1.)

16  III.  Facts

17          At the preliminary hearing, Deputy Gurnaby provided facts from his report

18  concerning the incident herein.  (LD 9.)  Around 1:00 p.m. on August 20, 2008, a Rite-Aid store

19  in Carmichael, California, was robbed.  (LD 9 at 5.)  An adult black male entered the store,

20  approached employee David Vardanian, and directed the employee to walk to the pharmacy

21  while pushing a handgun into the employee's side.  (LD 9 at 7-8.)  At the pharmacy, the suspect

22  told everyone not to move or say anything.  (LD 9 at 11.)  Another employee, Dawn Wisecarver,

23  who was working in the pharmacy (id. at 36), stated that the suspect stated he "wanted their

24  OxyContin."  (LD 9 at 15.)  Wisecarver saw the pharmacist put drugs in a bag, one of which was

25  methadone.  (LD at 16.)  During these exchanges, Wisecarver stated that the suspect had his gun

26  pointed at them.  (LD at 17, 38.)  After the robbery, the suspect walked out of the store, and

1  Vardanian ran to the front of the store and noted the suspect left the scene in a white-colored car

2  that looked like a Hyundai, with front license plate number 5WOH351.  (LD 9 at 11-12.)

3  Vardanian stated someone other than the suspect was driving the vehicle.  (LD 9 at 43.)

4          Deputy Gurnaby related that Vardanian described the suspect as 6 foot 2 inches

5  tall, weighing 200 pounds, wearing a gray hoodie, baggy jeans and dark-colored shoes.  (LD 9 at

6  12.)  Wisecarver described the suspect as 5 foot 11 inches tall, weighing about 200 pounds, in his

7  early twenties, wearing a gray-colored hooded shirt and jogging pants.  (LD 9 at 14.)  Wisecarver

8  saw the suspect carrying a dark-colored handgun.  (Id.)  The pharmacist described the suspect as

9  5 foot 10 inches tall, about 180 pounds, wearing a dark gray hooded sweatshirt, blue plaid

10  boxers, and dark gray like sweat type athletic pants.  (LD 9 at 57.)  The pharmacist claimed the

11  suspect had no facial hair.  (LD 9 at 62.)

12          The Sheriff's Department ran the license plate, and Deputy Baugh detained a

13  suspect at 5804 Sutter Avenue, which was approximately a mile to a mile and a half from the

14  Rite-Aid store.  (LD 9 at 18-19.)  Deputy Gurnaby and Deputy Warren brought Vardanian and

15  Wisecarver to 5804 Sutter Avenue for a field show-up.  (LD 9 at 19.)  Vardanian stated "it

16  looked like [the suspect], but the clothes were different."  (LD 9 at 20.)  Vardanian also noted

17  that the detained person was clean-shaven, but the suspect was slightly unshaven.  (LD 9 at 24.)

18  Vardanian also confirmed that the boxer shorts worn by the detained person looked like the boxer

19  shorts worn by the suspect.  (Id.)  "It was just the type and color of the boxers worn by the

20  [suspect]."  (LD 9 at 41.)  Wisecarver said she "believed it to be [the suspect]."  (LD 9 at 20.)

21  On redirect examination, Wisecarver clarified that she positively identified the suspect before she

22  saw the boxer shorts, and again after she saw the boxer shorts.  (LD 9 at 44.)  Wisecarver noted

23  that the suspect had changed clothes and shoes.  (Id.)  Law enforcement later found clothing in a

24  dumpster near the 5804 address, and Vardanian identified the clothing as the ones worn by the

25  suspect in the robbery.  (LD 9 at 23, 35.)

26          Deputy Warren testified that the pharmacist reported that the suspect had

3

1  Vardanian at gunpoint, and that the suspect demanded methadone and OxyContin.  (LD 9 at 53-

2  54.)  The pharmacist also reported seeing the suspect jump into a white vehicle that looked like a

3  Hyundai, with a front license plate number 5WOH351.  (LD 9 at 56.)  The suspect entered the

4  passenger side of the vehicle, and another person drove the vehicle.  (LD 9 at 57.)  Detective

5  Warren testified that Deputy Baugh "indicated that the suspect actually did have a couple days'

6  worth of facial hair growth."  (LD 9 at 58.)

7         Deputy Short went to 5804 Sutter Avenue and started checking the area for the

8  suspect white vehicle.  (LD 9 at 68.)  Deputy Short located a white Hyundai Elantra parked at the

9  southeast corner of the address where the vehicle used to be registered to, without a back license

10  plate.  (LD 9 at 69, 72.)  The deputy wrote down the vehicle identification number ("VIN") from

11  the in-car computer and went to compare it to the vehicle.  (LD 9 at 69.)  Although the VIN was

12  partially covered by paper, Deputy Short could make out the last two digits which matched the

13  last two digits of the VIN for the suspect vehicle.  (Id.)   Deputy Short then looked through the

14  driver's side rear window and saw a license plate face up on the rear seat, driver's side, that

15  matched the license plate from the robbery report.  (LD 9 at 70.)  There was a screwdriver on the

16  floorboard near the license plate.  (Id.)  Deputy Short later confirmed that the license plate inside

17  the vehicle matched the license plate on the front of the vehicle.  (LD 9 at 70-71.)  While

18  maintaining watch over the suspect vehicle, Deputy Short saw a black female and black male

19  walk along Sutter Avenue.  (LD 9 at 74.)  Deputy Short was aware the suspect was described as

20  about 6 feet tall, 200 pounds, and believed the black male matched this description, and

21  broadcasted the information on the radio.  (Id.)  A K-9 officer made contact with the individual at

22  the corner of Sutter Avenue and Fair Oaks Boulevard.  (LD 9 at 75.)  Through radio broadcasts,

23  Deputy Short later learned that the male subject was identified as the robbery suspect.  (Id.)

24         The court found that there was reasonable cause to believe the crimes alleged in

25  counts 1, 2, and 3, as well as their enhancements, did occur, and reasonable cause to believe that

26  petitioner was responsible, and therefore held petitioner to answer.  (LD 9 at 77.)

1   IV.   <u>Standards for a Writ of Habeas Corpus</u>

2           An application for a writ of habeas corpus by a person in custody under a

3 judgment of a state court can be granted only for violations of the Constitution or laws of the

4 United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

5 interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

6 <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

7           Federal habeas corpus relief is not available for any claim decided on the merits in

8 state court proceedings unless the state court's adjudication of the claim:

9               (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
10             determined by the Supreme Court of the United States; or

11               (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
12             State court proceeding.

13 28 U.S.C. § 2254(d).

14           Under section 2254(d)(1), a state court decision is "contrary to" clearly

15 established United States Supreme Court precedents if it applies a rule that contradicts the

16 governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

17 indistinguishable from a decision of the  Supreme Court and nevertheless arrives at a different

18 result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06

19 (2000)).

20           Under the  "unreasonable application" clause of section 2254(d)(1), a federal

21 habeas court may grant the writ if the state court identifies the correct governing legal principle

22 from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

23 prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ

24 simply because that court concludes in its independent judgment that the relevant state-court

25 decision applied clearly established federal law erroneously or incorrectly.  Rather, that

26 application must also be unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75

1   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

2   question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

3   omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

4   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

5   Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

6          The court looks to the last reasoned state court decision as the basis for the state

7   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

8   decision, "and the state court has denied relief, it may be presumed that the state court

9   adjudicated the claim on the merits in the absence of any indication or state-law procedural

10  principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

11  overcome by a showing that "there is reason to think some other explanation for the state court's

12  decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

13         Where the state court reaches a decision on the merits, but provides no reasoning

14  to support its conclusion, the federal court conducts an independent review of the record.

15  "Independent review of the record is not de novo review of the constitutional issue, but rather,

16  the only method by which we can determine whether a silent state court decision is objectively

17  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

18  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

19  basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must

20  determine what arguments or theories supported or, . . . could have supported, the state court's

21  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

22  arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at

23  786.

24  V.  Alleged Ineffective Assistance of Counsel

25         Petitioner claims that his no contest plea was involuntary and unintelligent due to

26  defense counsel's ineffective assistance.  Petitioner states that defense counsel informed him the

6

1  prosecution intended to enter into evidence pants with a waist size of 32" with a belt through the

2  loops. (Dkt. No. 1 at 7.)  Petitioner told defense counsel that petitioner wears size 36" pants, so

3  the pants in evidence could not be petitioner's.  Petitioner asked defense counsel to take pictures

4  of petitioner's pants to use as evidence, which pictures petitioner contends defense counsel

5  showed him during an interview.  Petitioner contends defense counsel subsequently destroyed

6  pictures of petitioner's pants and allegedly lied that petitioner's pants were no longer in

7  petitioner's jail property in order to induce petitioner to accept the twelve year plea offer.  When

8  petitioner was transferred to state prison, petitioner's missing pants were discovered during the

9  inventory process.  (Dkt. No. 1 at 12.)  Petitioner claims that if he had known the pants were in

10  his jail property, he would not have taken defense counsel's advice but would have insisted on

11  going to trial.  (Dkt. No. 1 at 14.)

12         Respondent argues that the state court's decision was reasonable, and that

13  petitioner's missing pants were not exculpatory evidence.

14         The Sixth Amendment guarantees the effective assistance of counsel.  The United

15  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

16  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

17  counsel, a petitioner must first show that, considering all the circumstances, counsel's

18  performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

19  identifies the acts or omissions that are alleged not to have been the result of reasonable

20  professional judgment, the court must determine whether, in light of all the circumstances, the

21  identified acts or omissions were outside the wide range of professionally competent assistance.

22  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

23         Second, a petitioner must establish that he was prejudiced by counsel's deficient

24  performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

25  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

26  been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

1  confidence in the outcome."  Id.

2          In assessing an ineffective assistance of counsel claim "[t]here is a strong

3  presumption that counsel's performance falls within the wide range of professional assistance."

4  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation omitted).  Additionally, there is a

5  strong presumption that counsel "exercised acceptable professional judgment in all significant

6  decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

7          The Strickland standards apply to claims of ineffective assistance of counsel

8  involving counsel's advice offered during the plea bargain process.  See Hill v. Lockhart, 474

9  U.S. 52, 58 (1985) (same two part standard applies in ineffective assistance of counsel claims

10  arising during the plea process); Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003) (the

11  Sixth Amendment "protect[s] the reliability of the entire trial process.").  "A defendant has the

12  right to make a reasonably informed decision whether to accept a plea offer."  Turner v.

13  Calderon, 281 F.3d 851, 880 (9th Cir.  2002) (citations omitted).  Trial counsel must give the

14  defendant sufficient information regarding a plea offer to enable him to make an intelligent

15  decision.  Id. at 881.  See also Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) ("[C]ounsel have a

16  duty to supply criminal defendants with necessary and accurate information.")  However, counsel

17  is not "required to accurately predict what the jury or court might find."  Turner, 281 F.3d at 881.

18  See also McMann v. Richardson, 397 U.S. 759, 771 (1970) ("uncertainty is inherent in predicting

19  court decisions.").  Nor is counsel required to "discuss in detail the significance of a plea

20  agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend"

21  the acceptance or rejection of a plea offer.  Turner, 281 F.3d at 881.  Although counsel must fully

22  advise the defendant of his options, he is not "constitutionally defective because he lacked a

23  crystal ball."  Id.  The relevant question is not whether "counsel's advice [was] right or wrong,

24  but . . . whether that advice was within the range of competence demanded of attorneys in

25  criminal cases."  McMann, 397 U.S. at 771.

26          The last reasoned rejection of this claim is the September 21, 2010 decision of the

1   Solano County Superior Court.  (LD 4.)  The state court applied, *inter alia*, Strickland, 466 U.S.

2   at 668, and rejected petitioner's claim as follows:

3           Petitioner alleges that his counsel failed to disclose to him the fact that
        his jail property included a pair of pants sized larger than the pants that the
4       robber may have worn.  Petitioner thinks that if he had had his pants
        available to him, he could have shown that he was not the robber.
5       Petitioner is incorrect.  Assuming that petitioner is correct about the size of
        the robber's clothes, the most that the pants in the jail property could have
6       shown was that at the time of arrest, petitioner was wearing pants of a
        different size.  It was already clear that one victim stated that petitioner
7       looked like the robber except that he had on different clothes.  The fact
        that petitioner had on larger pants does not mean that he could not have
8       worn smaller ones.  The photos that petitioner submitted showed that he
        was wearing one t-shirt sized XL and another sized 4XL.  It is obvious,
9       therefore, that the fact that he was wearing a 4XL t-shirt does not mean
        that he could not wear an XL sized t-shirt.  By analogy, the same size
10      difference could apply to the pants.

11          The factor that petitioner has focused on would not have been a
        reasonable one to rely on.  Objectively, a defendant should not base
12      his decision to go to trial on the size of pants in his jail property,
        whether or not counsel knew they were there.  Counsel was correct
13      – the pants could not be used to prove his innocence.  This would
        be true whether they were available or not.  In court, petitioner
14      would have been subject to personal identification.  Thus,
        petitioner cannot show that he was prejudiced by counsel's failure
15      to locate the pants, assuming that was what occurred.  In addition,
        petitioner received a substantial benefit when two robbery counts
16      and two gun enhancements were dismissed as part of the plea
        agreement.

17

18   (LD 4.)

19          This court reviewed the superior court's opinion and finds that, in light of the

20   record, the denial of petitioner's ineffective assistance of counsel claim was reasonable.  The

21   superior court properly applied Strickland standards.  Harrington, 131 S.Ct. at 788.  It would

22   have been unreasonable for defense counsel to rely on petitioner's pants held in petitioner's jail

23   property to defend petitioner in this action.  Because there were eyewitnesses to the robbery, and

24   at least two of the eyewitnesses identified petitioner on the basis of his boxer shorts, petitioner's

25   ////

26   ////

9

1   pants or even his pant size were not exculpatory.[1]  In addition, two of the eyewitnesses wrote

2   down the license number of the vehicle in which petitioner allegedly fled the scene, and

3   petitioner was arrested near where the suspect vehicle was recovered.  Under the circumstances,

4   this court cannot find that defense counsel's negotiated plea fell outside the wide range of

5   professionally competent assistance.

6           In his reply, petitioner contends the state court made several factual errors.  (Dkt.

7   No. 15 at 5.)  Petitioner states the state court erroneously assumed the clothing in jail property

8   was the clothing petitioner wore on the day of the crime rather than the clothing worn on the day

9   petitioner was taken into custody from court on September 23, 2008.  Petitioner argues the state

10   court erroneously assumed that an A-shirt and a T-shirt are the same type of clothing and are

11   worn the same way.  Finally, petitioner argues that the state court "distorted petitioner's claim by

12   stating 'petitioner alleges that counsel failed to locate petitioner's pants.'"  (Dkt. No. 15 at 5.)

13   Petitioner claims he never made that statement.  However, even assuming these alleged factual

14   errors are errors, none of them are material to this court's analysis.

15           Petitioner also contends in his reply that petitioner was "never positively

16   identified and there exists no statement from any witness to indicate otherwise."  (Dkt. No. 15 at

17   6.)  Petitioner argues that Deputy Gurnaby's testimony at the preliminary hearing does not meet

18   the qualifications to relate out-of-court statements as required by California Penal Code § 872,

19   because Deputy Gurnaby had only been a sworn peace officer for "approximately four years."

20   (LD 9 at 5.)

21   ////

22

23          [1]  Moreover, defense counsel was not constrained to prove the pants in evidence did not
   fit petitioner by using petitioner's pants in jail property.  As noted by respondent, defense counsel
24   could have introduced evidence of petitioner's waist size, brought in a different pair of
   petitioner's pants, or had petitioner try on the 32" pants.  (Dkt. No. 11 at 11.)  Petitioner's
25   reliance on the specific pants held in petitioner's jail property is unavailing.  Even if the pants
   located in the dumpster and entered into evidence did not fit petitioner, the size difference would
26   not prove petitioner did not commit the robbery.

1    However, federal habeas corpus relief "does not lie for errors of state law." Lewis

2  v. Jeffers, 497 U.S. 764, 780 (1990); Estelle v. McGuire, 502 U.S. 62, 67 (1991).  A state court's

3  evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law,

4  either by infringing upon a specific federal constitutional or statutory provision or by depriving

5  the defendant of the fundamentally fair trial guaranteed by due process.  See Pulley v. Harris, 465

6  U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a

7  perceived error of state law.")  Thus, petitioner cannot challenge the admission of Deputy

8  Gurnaby's testimony at the preliminary hearing in this habeas proceeding.  In any event,

9  California Penal Code § 872 provides an alternative to the five years' experience requirement:

10             Any law enforcement officer or honorably retired law enforcement
             officer testifying as to hearsay statements shall **either** have five
11            years of law enforcement experience **or** have completed a training
             course certified by the Commission on Peace Officer Standards and
12            Training that includes training in the investigation and reporting of
             cases and testifying at preliminary hearings.

13

14  Id. (emphasis added).  Petitioner failed to show Deputy Gurnaby did not have the alternative

15  training required to testify at the preliminary hearing.

16             Moreover, petitioner provided a copy of the January 16, 2009 interview of Dawn

17  Wisecarver, by defense counsel's investigator, that essentially tracks and expands on the

18  testimony related by Deputy Gurnaby at the preliminary hearing.  (Dkt. No. 1 at 31-37.)

19  Wisecarver stated that she "had plenty of time to just stare at [the suspect's] clothing, and in

20  particular his underwear because they were visible over the top of his sweatpants." (Dkt. No. 1 at

21  34.)  Wisecarver described what happened after she was taken to the field show-up to attempt to

22  identify the suspect:

23             [a]s soon as I saw the young man's face, I thought it was the same
             person, but I could not be completely certain of it. . . . [e]specially
24            since the outer clothing the man they were showing me was
             wearing was different than the clothes that the young man was
25            wearing when he committed the robbery.  Apparently he had
             changed clothes after he left.

26

1
2
3
4

      The only way I could have been certain that it was the same person was if I could see his underwear.  I asked the officers to have him pull down his pants enough so that I could see the top of his underwear.  As soon as I saw them, I recognized them immediately.  I'm certain the underwear this young man that the police were showing me was wearing were the same kind of underwear that the young man who robbed the store was wearing.

5
6
7

      Like I said, the face of the man they showed me kind of looked like the face of the young man who did the robbery, but I wasn't completely certain of it.  On the other hand, I'm certain that the underwear were the same.

8   (Dkt. No. 1 at 36.)  While petitioner may have challenged the eyewitnesses' identification had the

9   case gone to trial, petitioner opted to accept the plea offer.

10        In addition, petitioner has failed to demonstrate <u>Strickland</u> prejudice on this claim.

11  Because the pants were not exculpatory, petitioner's claim that he would not have taken the plea

12  offer had he known the pants remained in his jail property is not persuasive.  Petitioner was

13  facing three counts of robbery with gun enhancements alleged for each count.  The plea offer

14  reduced petitioner's charges to one count of robbery with one gun enhancement, and a "low

15  term" prison sentence.  (LD 1 at 2.)  Given the exposure to substantially increased prison time,

16  this court cannot find that but for defense counsel's alleged ineffectiveness, petitioner would

17  have opted to go to trial.

18        Finally, the trial court found, and the state court record reflects, that petitioner's

19  plea was given voluntarily and with a full understanding of its consequences.  (LD 1 at 3-11.)  A

20  defendant's representations on the record, as well as any findings made by the trial court, present

21  a "formidable barrier" in a collateral challenge.  <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74

22  (1977). "Solemn declarations in open court carry a strong presumption of verity." <u>Id.</u> at 74.

23  Petitioner failed to demonstrate his plea was involuntary or unintelligent.

24        For all of the above reasons, the state court's rejection of petitioner's claim for

25  relief was neither contrary to, nor an unreasonable application of, controlling principles of United

26  States Supreme Court precedent.

VI.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 19, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

robi1219.157

13